IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BERTLES, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE CYCLE GROUP, | : | No. 18-4707 |
|     Defendant. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                                                   **March 3, 2020**

John Bertles was injured when the handlebar of the bike he was riding in a BMX competition snapped, causing him to fall. He sued The Cycle Group, the company that sold him the bike. The Cycle Group then sued a Taiwanese company, The Omni Cycle, Inc., which is the company that made the bike and shipped it to The Cycle Group. The Omni Cycle seeks to dismiss the Third-Party Complaint against it because this Court lacks personal jurisdiction over it. The Court allowed the parties to conduct jurisdictional discovery. That discovery is now complete, and the motion has been briefed. The Court will grant the motion and will dismiss the Third-Party Complaint against The Omni Cycle for lack of personal jurisdiction.

**I.    FACTUAL BACKGROUND**

    **A.    Bertles's Case**

Bertles is a professional BMX bicyclist. (Compl. ¶ 8.) Bertles bought a set of handlebars and properly installed those handlebars on his bike. (*Id*. ¶ 9.) On November 19, 2016, Bertles was riding his bike in an event in Pottstown, Pennsylvania, "when suddenly and without warning, the left handlebar snapped, tore, fractured and cracked at the location of a manufacturing weld, thereby causing the plaintiff to twist and fall and suffer severe and debilitating injuries." (*Id*. ¶ 10; Def./Third-Party Pl.'s Br. in Opp'n to Third-Party Def.'s Sec. Mot. to Dismiss Ex. J. [Bertles's

Interrog Resps.].) As a result of the accident, Bertles sued The Cycle Group, Inc. for negligence, strict liability, and breach of warranty.

On March 21, 2019, The Cycle Group filed a third-party complaint against The Omni Cycle. According to the Third-Party Complaint, Omni Cycle manufactured the handlebars that Bertles used when he was injured. (Third-Party Compl. ¶ 20.) Omni Cycle then sold the handlebars to The Cycle Group sometime prior to Bertles's accident. (*Id*. ¶ 25.) The Cycle Group then distributed the handlebars that Bertles used to J & R Bicycles in Florida. (*Id*. ¶ 21.) "If the handlebars were defectively manufactured as alleged by Bertles, it is because of Omni Cycle's acts or omissions." (*Id*. ¶ 22.) The Cycle Group charges Omni Cycle with negligence, strict liability, breach of contract, contribution, and indemnification.

On September 26, 2019, Omni Cycle sought to dismiss the Third-Party Complaint for lack of personal jurisdiction. The Court denied the motion without prejudice to allow the parties to conduct limited discovery on the issue of the Court's personal jurisdiction over Omni Cycle. After the parties completed that limited discovery, Omni Cycle renewed its motion to dismiss for lack of personal jurisdiction.

**B.     The Omni Cycle, Inc.**

Omni Cycle was created in 1989; it is owned by Wang Juhe. (Third-Party Def.'s Am. Mot. to Dismiss Ex. C [Wang Hui-Ju Dep.] at 12-13.) The company employs about fifteen people, none of whom have entered the United States on behalf of Omni Cycle. (*Id*. at 20.)

Two Cycle Group employees approached The Omni Cycle's booth at a trade show in Taipei in 2012. (Third-Party Def.'s Am. Mot. to Dismiss Ex. A. [Jurisdictional Interrog. Resps.].) They met with Omni Cycle employees to ask whether Omni Cycle could manufacture handlebars. (*Id*.) Between 2012 and 2016, the parties met in person nine times, all of which occurred in Taiwan.

(*Id.*) According to Omni Cycle, the handlebars it made for The Cycle Group were shipped from Taiwan to Los Angeles; once in the United States, Omni Cycle did not know where the product ultimately travelled. (*Id.*) In 2017, annual sales from Omni Cycle to the Cycle Group were $30,632; in 2018, they were $35,347; and in 2019, annual sales were $6,060. (*Id.*) From 2017 to 2019, Omni Cycle sold to two other companies in the United States, neither of which was located in Pennsylvania. (*Id.*)

Omni Cycle is not incorporated in Pennsylvania, has no offices in the Commonwealth, has no mailing address in Pennsylvania, has never paid taxes in Pennsylvania, and has never executed a contract in Pennsylvania. (Third-Party Def.'s Am. Mot. to Dismiss Ex. D [Wang Aff.].) Omni Cycle does not advertise in the United States, does not have any business entities registered in the United States, does not do business with companies in Pennsylvania, and has not targeted potential customers in Pennsylvania. (Jurisdictional Interrogs. Resp.) Omni does not own, lease, or utilize any real property in Pennsylvania. (*Id.*) Omni Cycle has no bank accounts in the United States. (*Id.*)

## II.   STANDARD OF REVIEW

The Omni Cycle seeks to dismiss the Third-Party Complaint against it under Rule 12(b)(2) of the Federal Rules of Civil Procedure based on a purported lack of personal jurisdiction over it in this Court. "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

## III. DISCUSSION

A district court may assert personal jurisdiction over a nonresident to the extent allowed under the law of the state in which the district court sits. Fed R. Civ. P. 4(e). Therefore, for this Court to properly exercise personal jurisdiction over Omni Cycle, such jurisdiction must be conferred by Pennsylvania's long-arm statute. 42 Pa. Cons. Stat. § 5322. A court must then be satisfied that personal jurisdiction is appropriate under the Due Process clause of the Fourteenth Amendment. *See Imo Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Under Pennsylvania law, this inquiry collapses into one step because Pennsylvania's long-arm statute authorizes courts to exercise personal jurisdiction to the full extent permitted by the Due Process clause of the United States Constitution. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).

Under the Due Process Clause of the Fourteenth Amendment, courts may exercise personal jurisdiction over out-of-state defendants only in cases where the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). The minimum contacts requirement may be met through either of two theories of personal jurisdiction: specific or general. *See, e.g. BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

### A. General Personal Jurisdiction

Personal jurisdiction can either be general or specific. Courts possess general personal jurisdiction over out-of-state companies only if the companies' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the state." *Goodyear*, 564 U.S. at 919. Clearly, a company is "at home" in its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 143 S. Ct. 746, 760 (2014). If, however, a company lacks

both of these primary connections with a forum state, there must be "exceptional" circumstances present for the company to be considered "at home" in the state. *Id.* at 761 n.19. While the flow of a defendant's products to a state "may bolster an affiliation germane to *specific* jurisdiction" in the state, it cannot create such an exceptional case that the defendant is at home for purposes of *general* jurisdiction. *Goodyear*, 564 U.S. at 927; *see also Daimler*, 134 S. Ct. at 760–61 (explaining that to "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" would be "unacceptably grasping").

Based on the record adduced during jurisdictional discovery, this Court cannot exercise general personal jurisdiction over Omni Cycle because that company is clearly not "at home" in Pennsylvania. Omni Cycle is neither incorporated in Pennsylvania, nor is its principal place of business located in Pennsylvania. The Cycle Group has not even attempted to argue that exceptional circumstances render Omni Cycle at home in Pennsylvania. This Court does not have general personal jurisdiction over Omni Cycle.

### B. Specific Personal Jurisdiction

#### 1. Stream-of-commerce theory

The Cycle Group claims that this Court has specific personal jurisdiction over Omni Cycle. Based on the jurisdictional record compiled in this litigation, this Court concludes that it does not have specific personal jurisdiction over Omni Cycle.

Specific jurisdiction applies if the non-resident defendant has purposefully directed its activities at a resident of the forum and the injury arises from or is related to those activities. *See Goodyear*, 564 U.S. at 919 ("In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.").

Whether specific jurisdiction exists requires a three-part inquiry: (1) did the defendant purposefully direct its activities at the forum; (2) does the litigation arise out of or relate to at least one of those activities; and (3) does the exercise of jurisdiction otherwise comport with fair play and substantial justice? *O'Connor*, 496 F.3d at 317.

The Cycle Group contends that this Court has specific personal jurisdiction over Omni Cycle based on the stream-of-commerce theory. According to The Cycle Group, "although Omni Cycle is not physically present in Pennsylvania, it is constitutional to exercise jurisdiction over it because Omni Cycle placed its products into a stream of commerce that led it into that state." (The Cycle Grp.'s Br. in Opp'n to Third-Party Def. The Omni Cycle Inc.'s Sec. Mot. to Dismiss [Cycle Grp. Br.] at 16.) Omni Cycle knew that it sent products into the United States and that those products could end up in Pennsylvania. (*Id*. at 16-17.) Therefore, argues The Cycle Group, this Court can exercise personal jurisdiction over Omni Cycle here.

The Cycle Group's reading of the law would expand the stream of commerce theory beyond all recognition. "The stream-of-commerce theory contends, essentially, that specific jurisdiction exists over a non-resident defendant when that defendant 'has injected its goods into the forum state indirectly via the so-called stream of commerce,' rendering it foreseeable that one of the defendant's goods could cause injury in the forum state." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104-05 (3d Cir. 2009).

The current waters of the stream of commerce theory are somewhat cloudy in this Circuit. Indeed, "the [Third Circuit] Court of Appeals has . . . been reluctant to endorse the stream-of-commerce theory as a basis for a court's exercise of specific personal jurisdiction." *Wagner v. Midwest Automation LLC*, Civ. A. No. 19-1034, 2019 WL 5696141, at *2 (E.D. Pa. Nov. 1, 2019).

Whatever the current contours of the theory, it is crystal clear that a non-resident defendant contracting with a resident distributor is insufficient to establish specific jurisdiction under the stream-of-commerce theory. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1783 (2017).

The Cycle Group repeatedly states that Omni Cycle had to know that its products would end up in Pennsylvania. Moreover, argues The Cycle Group, "when viewing the economic realities of the instant matter, it is clear that Omni Cycle receives significant benefits from the Pennsylvania marketplace as well as protection under Pennsylvania law even though it may not directly place its product in the state." (Cycle Grp. Br. at 18.)

The record does not support the contention that this Court has specific personal jurisdiction over Omni Cycle. Rather, the record reveals a Taiwanese company that intended its goods to enter the United States. Moreover, Omni Cycle knew that it was shipping its product to its distributor in California. Beyond that, the record does not demonstrate that Omni Cycle received significant benefits from the Pennsylvania marketplace. Perhaps it hoped that its products would enter Pennsylvania, but the company might have also hoped that its products would enter Minnesota, or North Dakota, or any of the fifty states. But this hope does not equate with purposefully directing its activities at Pennsylvania. The mere entrance of a product into the United States does not create nationwide personal jurisdiction over the company that began the cycle.

Moreover, there is no evidence that this litigation arises out of activities Omni Cycle purposefully directed to Pennsylvania. The handlebars at issue in this case were designed by The Cycle Group. They were then made in Taiwan by Omni Cycle, which then shipped the handlebars to California. Once The Cycle Group received the shipment, the handlebars traveled to distributors, then to dealers, and finally to customers. Here, Bertles bought the handlebars in Florida and

eventually brought them to Pennsylvania. This is not purposeful direction by Omni Cycle, but random chance. Omni never intentionally dealt with a customer in Pennsylvania, directed its activities to Pennsylvania, or even sold a product in Pennsylvania. The questionably viable stream-of-commerce theory is of no use here.

2. *Omni Cycle's website*

The Cycle Group also contends that Omni Cycle's website demonstrates that Omni Cycle intended to direct its activities at Pennsylvania and therefore establishes personal jurisdiction in Pennsylvania. (Cycle Grp. Br. at 21.) According to The Cycle Group, Omni Cycle's website allows customers in the United States to place and inquire about orders. (*Id*. at 21-22.) "If Omni Cycle did not want customers from the United States, it would not advertise that it exports products to the United States, or it could have designed its website to prevent interaction from users based in the United States." (*Id*. at 22.)

Even if The Cycle Group has adequately demonstrated the commercial nature of Omni Cycle's website—which does not appear to be the case—it must demonstrate that Omni Cycle purposefully availed itself of conducting activity in Pennsylvania by directly targeting its website to Pennsylvania, knowingly interacting with residents of Pennsylvania through its website, or through sufficient other related contacts. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

The Cycle Group has not made the necessary demonstration here. The evidence is that orders cannot be placed from the website. "The website is only for information purposes. Order[s] cannot be placed from this website." (Wang Hui-Ju Dep. at 39.) The most that a visitor can do in the United States is contact Omni Cycle through the website. There is, however, no indication that anybody in Pennsylvania ever did so. Omni Cycle did not target its website to individuals in

Pennsylvania, or knowingly interact with people in Pennsylvania. Indeed, there appears to be zero interaction between Omni Cycle and Pennsylvania customers. Thus, Omni Cycle's website fails to establish personal jurisdiction over it in this Court.

## IV. CONCLUSION

There is no basis for this Court to assert personal jurisdiction over Omni Cycle in this litigation. The Cycle Group's Third-Party Complaint will therefore be dismissed. An Order consistent with this Memorandum will be docketed separately.